IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NORMAN SIALES, | ) | CV. NO. 11-00299 DAE-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HAWAII STATE JUDICIARY, | ) | |
| DEPARTMENT OF HUMAN | ) | |
| RESOURCES, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER (1)  DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND (2)
DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

On January 23, 2012, the Court heard Plaintiff's ("Plaintiff") Motion

for Preliminary Injunctive Relief and Defendant's Motion to Strike Plaintiff's

Complaint.  Norman Siales ("Plaintiff"), proceeding pro se, appeared at the hearing

on behalf of himself; Deputy Attorney General Steve K. Miyasaka appeared on

behalf of Defendant Judiciary, State of Hawai'i, Human Resources Department

("Defendant").  After reviewing the motions and the supporting and opposing

memoranda, the Court (1)  **DENIES** Defendant's Motion to Strike Plaintiff's

Complaint for Declaratory and Injunctive Relief (Doc. # 31), and (2) **DENIES**

Plaintiff's Motion for Preliminary Injunctive Relief (Doc. # 28).

## BACKGROUND

According to Plaintiff, on January 12, 2009, he began doing volunteer clerical work for Defendant.  ("FAC," Doc. # 17 ¶ 12.)  On January 28, 2009, Defendant denied his application for a court clerk position. (Id.; "Hara Decl.," Doc. # 34-1 ¶ 8.)  On August 11, 2009, Plaintiff reapplied for the same position and was again denied.  (FAC ¶ 12.)   On January 31, 2010, Plaintiff filed a Charge of Discrimination with the Hawaii Civil Rights Commission ("HCRC"), alleging that Defendant did not hire him for the clerk position because of his national origin. (Doc. # 34-10).  According to Plaintiff, the HCRC and the Equal Employment Opportunity Commission ("EEOC") concluded that "they . . . couldn't find sufficient evidence in substantiating my employment discrimination claim."  (FAC ¶ 16.)

On May 5, 2011, Plaintiff filed a Complaint ("original Complaint") against Defendant Hawaii State Judiciary, Department of Human Resources ("Defendant"), alleging employment discrimination.  (Doc. # 1.)  Plaintiff alleged, among other things, that Defendant discriminated against him by failing to hire him for a clerical position because of his national origin.  (Doc. # 17 at 1–2.)

On August 10, 2011, Plaintiff filed a second Complaint, entitled "Complaint for Declaratory and Injunctive Relief."  ("FAC," Doc. # 17.)  On

September 6, 2011, Defendant filed its Answer to Plaintiff's original Complaint. (Doc. # 21.)  On September 30, 2011, Defendant filed a Motion to Strike the second Complaint.  (Doc. # 31.)

On September 23, 2011, Plaintiff filed a Motion for a Preliminary Injunction, "Supplemental Memorandum for the Preliminary Injunctive Relief Motion Ref:  Retaliatory/Employment Discriminations" ("Injunction Motion"). ("Inj. Mot.," Doc. # 28.)  On December 20, 2011, Defendant filed a Memorandum in Opposition to Plaintiff's Injunction Motion.  ("Opp'n," Doc. # 34.)  On January 13, 2012, Plaintiff filed a Response to Defendant's Motion to Strike and Defendant's Opposition.  (Doc. # 35.)

STANDARD OF REVIEW

I.   Motion to Strike

"Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed." Wailua Ass'n, 183 F.R.D. at 554 (citation omitted).  In considering a motion to strike, the court views the challenged pleadings in the light most favorable to the non-moving party.  Id. (citation omitted). Generally, motions to strike are not favored by courts in the absence of prejudice.  Id. at 553, 555.

3

II.     Preliminary Injunction

"[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 376 (2008).  To obtain a preliminary injunction, the moving party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 365 (citing Munaf v. Geren, 128 S. Ct. 2207, 2218–19 (2008); Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 311–12 (1982)); see also Stormans, Inc. v. Selecky, 586 F.3d. 1109, 1126–27 (9th Cir. 2009) (applying heightened standard mandated by Winter).  "'[S]erious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can [also] support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010).  A district court has great discretion in determining whether to grant or to deny a preliminary injunction. See Wildwest Inst. v. Bull, 472 F.3d 587, 589–90 (9th Cir. 2006).

4

Plaintiffs seeking preliminary injunctive relief must "demonstrate that irreparable injury is <u>likely</u> in the absence of an injunction." <u>Winter</u>, 129 S. Ct. at 375 (emphasis in original). The mere possibility of irreparable harm is insufficient. <u>Id.</u> (finding the Ninth Circuit's standard of a "possibility" of harm too lenient). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." <u>Summers v. Earth Island Inst.</u>, 129 S. Ct. 1142, 1149 (2009).

If irreparable injury is shown, courts must then "'balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" <u>Winter</u>, 129 S. Ct. at 376 (quoting <u>Amoco Prod. Co.</u>, 480 U.S. at 542). In assessing whether the plaintiff has met this burden, the district court has a "'duty . . . to balance the interests of all parties and weigh the damage to each.'" <u>Stormans</u>, 586 F.3d. at 1138 (quoting <u>L.A. Mem'l Coliseum Comm'n v. Nat'l Football League</u>, 634 F.2d 1197, 1203 (9th Cir. 1980)).

Finally, the court must weigh the public interest, if any, implicated by the injunction.  <u>Winter</u>, 129 S. Ct. at 374.  When the reach of an injunction is narrow, limited only to the parties, and has no impact on nonparties, the public interest will be "at most a neutral factor in the analysis rather than one that favor[s][granting or] denying the preliminary injunction."  <u>Bernhardt v. Los Angeles County</u>, 339 F.3d 920, 931 (9th Cir. 2003).  "If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction."  <u>Stormans</u>, 586 F.3d. at 1139 (citing <u>Sammartano v. First Judicial Dist. Court</u>, 303 F.3d 959, 965 (9th Cir. 2002)).  "[When] an injunction is asked [for] which will adversely affect a public interest . . . the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff."  <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 312–13 (1982).  In fact, "courts . . . should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  <u>Winter</u>, 129 S. Ct. at 376–77.

## DISCUSSION

### I.   Motion to Strike

Defendant argues that the Court should strike Plaintiff's second Complaint filed on August 10, 2011 because although it was filed before Defendant answered the original May 5, 2011 Complaint, it was never served on Defendant.  (Doc. #31-1 at 3–4.)  Defendant further argues that it only waived service for the original Complaint, and that once Defendant filed its Answer to the original Complaint, Plaintiff could amend the original Complaint only with Defendant's consent or leave of Court.  (<u>Id.</u>)

Rule 15(a)(1) allows a party to amend his pleading "once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading[.]"  Rule 15(a)(2) provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

Rule 4(c)(1) requires that a plaintiff serve the summons and complaint "within the time allowed by Rule 4(m)" – that is, within 120 days after the complaint is filed.  Fed. R. Civ. P. 4(c)(1), 4(m).  Rule 4(m) states, in relevant part:

If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Absent a showing of good cause, courts have discretion to "extend time for service upon a showing of excusable neglect." Lemoge v. United States, 587 F.3d 1188, 1198 (9th Cir. 2009) (citing In re Sheehan, 253 F.3d 507, 512 (9th Cir. 2001). In making extension decisions under Rule 4(m), a district court may consider factors "like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007) (citation omitted).

Here, the Court construes Plaintiff's second Complaint as a first amended complaint ("FAC") and finds that it complies with Rule 15(a) because Plaintiff filed it before Defendant filed an answer to the original complaint. Although Plaintiff appears to admit in his Response to Defendant's Motion that he did not serve Defendant with the second Complaint, the Court declines to strike the second Complaint and instead will grant Plaintiff an extension to serve.

Defendant did not argue that it suffered prejudice as a result of the lack of service. Defendant also knew about Plaintiff's Complaint for Declaratory and Injunctive Relief at least as early as September 30, 2011, when it filed the

Motion to Strike.  Moreover, even if the Court granted Defendant's Motion to Strike, it would nevertheless give Plaintiff leave to file an amended complaint. Going through that process only to reach virtually the same situation in which the case is now – the filing of an amended complaint – would contravene the Court's interest in promoting judicial economy.  Therefore, the Court will allow Plaintiff an extension for service of the second Complaint.

Accordingly, the Court DENIES Defendant's Motion to Strike, construes Plaintiff's Complaint for Declaratory and Injunctive Relief as a First Amended Complaint, and orders Plaintiff to serve Defendant with that Complaint within 30 days of the filing of this Order.

## II.   Preliminary Injunction

In his Motion, Plaintiff appears to seek a preliminary injunction ordering Defendant to clear Plaintiff's criminal record and  "refrain from their retaliatory discriminations."  (Inj. Mot. at 24.)

## A.   Likelihood of Success on the Merits

Plaintiff's first cause of action, entitled "Cause of Action I," in his FAC alleges violations of Title VII of the Civil Rights Act of 1964 and 1991 and cites 42 U.S.C. § 2000e.  The FAC does not make clear which theory of Title VII liability Plaintiff is asserting.  However, throughout the FAC, Plaintiff makes

general mentions of "retaliatory discriminations," "desparate [sic] treatment," and "unfair job requirements."  The Court will therefore construe Plaintiff's FAC as alleging a disparate treatment claim, a retaliatory discrimination claim, and a disparate impact claim.  See Jackson v. Carey, 353 F.3d 750, 756–57 (9th Cir. 2003) ("In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." (citation and quotation marks omitted)).  Plaintiff also appears to allege violations of Title II of the Americans with Disabilities Act ("ADA") and various constitutional claims.

The Court evaluates Plaintiff's likelihood of success on the merits of each claim below.

1.   Disparate Treatment

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") prohibits employers from discriminating against an employee based on race, color, religion, sex, or national origin.  Id. § 2000e–2.  Title VII also makes it unlawful for an employer to retaliate against an employee because he has taken an action to enforce his rights under Title VII.  Id. § 2000e–3.

"A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action."  Ricci v.

10

DeStefano, 129 S. Ct. 2658, 2672, 174 L. Ed. 2d 490 (2009).  "To establish a prima

facie case, plaintiffs must offer evidence that gives rise to an inference of unlawful

discrimination."  Hawn v. Executive Jet Mgmt., 615 F.2d 1151, 1156 (9th Cir.

2010) (quotations and modifications omitted).

      The Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S.

792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) adopted a burden shifting scheme for

discriminatory treatment cases.  In McDonnell Douglas, the Supreme Court held:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802.  Applying this test, the Ninth Circuit has stated that to establish a

prima facie case of disparate treatment, the Plaintiff

> must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably.

Chuang v. Univ. of Cal. Davis Bd. of Trustees, 225 F.3d 1115, 1123 (9th Cir.

2000). "Failure to produce evidence of qualification will typically prevent a

plaintiff from satisfying either the second or fourth prong of the McDonnell

Douglas test." <u>Lyons v. England</u>, 307 F.3d 1092, 1113 (9th Cir. 2002). After such

a showing, the burden of production "shifts to the employer to articulate some

legitimate nondiscriminatory reason for the challenged action. <u>Id.</u> at 1123–24

(citing <u>McDonnell Douglas</u>, 411 U.S. at 802). "[S]hould the defendant carry this

burden, the plaintiff must then have an opportunity to prove by a preponderance of

the evidence that the legitimate reasons offered by the defendant were not its true

reasons, but were a pretext for discrimination." <u>Texas Dep't. of Cmty. Affairs v.</u>

<u>Burdine</u>, 450 U.S. 248, 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); <u>Chuang</u>,

225 F.3d at 1124 (same).

Here, for Title VII purposes, Plaintiff can satisfy the first and third

elements because he belongs to a protected class – he states that he is a citizen of

Pohnpei, a state in the Federated States of Micronesia – and that he suffered

adverse employment action in not being hired for the clerk position.  (<u>See</u> FAC ¶ 5,

12.)  But Plaintiff fails to satisfy the second prong because he does not show that

he was qualified for the position he sought.  A copy of the job vacancy notice for

the clerk position lists minimum requirements for general experience, specialized

experience, and a skill requirement – the ability to type at a rate of 40 net words

per minute.  ("Pl.'s Ex. A" Doc. # 28-1.)  The notice also states that successful

completion of a two-year clerical or business curriculum may be substituted for

12

two years of general experience.  (Id.)  The notice also states that "[s]tudy at an accredited university or college in a para-legal program" may be substituted for up to two years of specialized experience.  (Doc. # 28-2.)  Plaintiff's original Complaint claims that he completed a two-year paralegal program from "Ashworth college," which Plaintiff references somewhat in his FAC, which could potentially substitute for two years of specialized experience if Plaintiff can show that the college's program was accredited.  The only evidence Plaintiff submits to support his claim is a copy of Ashworth's website, which states that it is an "Accredited Member[] of the Distance Education and Training Council."  (Doc. # 28-10.) However, Plaintiff does not assert that he met the typing skill requirement for the position, and instead appears to complain of Defendant's  "meticulous unfair typing standard" and "unfair job requirements."  (FAC ¶ 23.)  As to the fourth prima facie element, Plaintiff does not even allege, much less show, that similarly situated individuals outside his protected class were treated more favorably. Therefore, Plaintiff has failed to establish a prima facie case of disparate treatment.

Even if Plaintiff did establish a prima facie case, however, Defendant has produced evidence demonstrating a legitimate nondiscriminatory reason for not hiring Plaintiff.  Specifically, Defendant demonstrates that Plaintiff did not meet the minimum requirements for the position.  For example, Defendant states that

13

Ashworth College is not accredited by any of the accrediting bodies recognized by Defendant and that Plaintiff stated in his job application that he worked at the District Court as a volunteer for 16 hours a week for seven months, short of the requisite two years of general clerical experience. (Hara Decl. ¶ 10–11, 15.) Plaintiff also stated on his applications for the clerk position that he types at 25 words per minute, below the required typing speed is 40 words per minute. (Doc. # 34-6.)  The only clerical experience he listed is the "volunteer judicial clerk" position from 2008 to 2009. (Docs. # 34-5, 34-6.)  In a declaration, Lynne Kushiyama, the Human Resources Specialist who reviewed Plaintiff's application on behalf of Defendant stated that although the written application includes a voluntary Applicant Survey that seeks information about sex, race/ethnic background and age, the information on the Applicant Survey is maintained separately from the application itself and is not scanned into the Judiciary's application database, where staff reviews applications. ("Kushiyama Decl.," Doc. 34-2 ¶ 6.)  Kushiyama also declared that she was not aware of Plaintiff's national origin when she reviewed his applications, and that because he did not meet the experience requirements, she did not review his typing speed or look into his criminal history. (Id. ¶¶ 11–12.)  Thus, the Court finds that Defendant has shown a legitimate nondiscriminatory reason for not hiring Plaintiff.

14

Finally, although Plaintiff makes numerous conclusory allegations that Defendant was discriminatory, Plaintiff does not make clear to the Court how Defendant's reasons for not hiring him were pretext for discrimination.  Therefore, the Court finds that Plaintiff is unlikely to succeed on the merits of a disparate treatment claim.

2.    Retaliatory Discrimination

Title VII's "opposition" clause makes it "'unlawful . . . for an employer to discriminate against any . . . employee[ ] . . . because he has opposed any practice made . . . unlawful . . . by this subchapter.'" Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 129 S. Ct. 846, 850 (2009) (quoting 42 U.S.C. § 2000e–3(a)) (modification in original).  "When an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity."  Id. at 851.

"'In order to establish a prima facie case of retaliation [a plaintiff] must demonstrate that (1) she had engaged in a protected activity'; (2) the [employer] subjected her 'to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action.'" Nilsson v. City of Mesa, 503 F.3d 947, 953–54 (9th Cir. 2007) (quoting Porter v.

15

Cal. Dep't of Corrs., 419 F.3d 885, 894 (9th Cir. 2005); see also Little v. Windermere Relocation, Inc., 301 F .3d 958, 969 (9th Cir. 2002) (same).  "If [a plaintiff] is able to assert a prima facie retaliation claim, the 'burden shifting' scheme articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies."  Steggal v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003) (citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002); see also Nilsson, 503 F.3d at 954.

Per McDonnell Douglas, if a plaintiff establishes a prima facie case of retaliation, "the burden shifts" to the employer "to articulate a legitimate, non-retaliatory reason for its actions."  Nilsson, 503 F.3d at 954; see also Steggal, 350 F.3d at 1066 (citing Manatt v. Bank of Am., N.A., 339 F.3d 792, 800 (9th Cir. 2003).  If the employer establishes such a reason, the plaintiff "bears the ultimate burden of submitting evidence that the [employer's] proffered reason is merely a pretext for a retaliatory motive."  Nilsson, 503 F.3d at 954 (citing Porter, 419 F.3d at 894).

Here, Plaintiff has failed to establish a prima facie case for a Title VII retaliation claim.  Specifically, Plaintiff has not established a causal link between an alleged protected activity and the adverse employment action.  In his FAC, Plaintiff states that he believes he filed a complaint with the HCRC before

16

submitting his second job application to Defendant on August 11, 2009.  (FAC

¶ 12.)  However, Plaintiff does not provide any further support in his FAC or in his

Injunction Motion.  Moreover, the record shows that Plaintiff filed a complaint

with the HCRC <u>after</u> his second job application was denied:  a copy of the Charge

of Discrimination with the HCRC signed by Plaintiff is dated January 31, 2010 and

alleges discrimination on August 13, 2009.  (Doc. # 34-10.)  Plaintiff does not

identify any other protected activity.  The Court therefore concludes that Plaintiff

has failed to demonstrate a causal link between a protected activity and establish a

prima facie case of retaliation.

Again, even if Plaintiff did establish a prima facie case of retaliation,

he is unlikely to prevail.  As discussed <u>supra</u>, Defendant has demonstrated a

legitimate, non-retaliatory reason for its action by showing that Plaintiff did not

meet the minimum qualifications for the clerk position, and Plaintiff has not

pointed to any evidence showing that Defendant's reason was pretextual.

Accordingly, the Court finds that Plaintiff is unlikely to succeed on

the merits of a retaliation claim.

3.    Disparate Impact

"A disparate impact claim challenges employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Rose v. Wells Fargo & Co., 902 F.2d 1417, 1423 (9th Cir. 1990).  To establish a prima facie case of disparate impact, the plaintiff must: 1) identify the specific selection criteria being challenged; 2) show disparate impact; and 3) prove causation.  Id. at 1424; see also Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988).  As a general rule, the plaintiff must demonstrate with statistical evidence "'that an employment practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants.'" Lawrence v. Department of Interior, 525 F.3d 916, 921 (9th Cir. 2008) (quoting Stout v. Potter, 276 F.3d 1118, 1122 (9th Cir. 2002)).

Unlike a disparate treatment claim, however, before the burden shifts, "plaintiffs must do more than merely raise an inference of discrimination . . . ; they 'must actually prove the discriminatory impact at issue.'"  Garcia v. Spun Steak Co., 998 F.2d 1480, 1486 (9th Cir. 1993) (quoting Rose, 902 F.2d at 1421.)  Thus, it is not sufficient to present evidence raising an inference of discrimination, but the plaintiff must actually prove it.  Potter, 276 F.3d at 1122.

18

Once proven, "the burden shifts to the defendant who may either discredit the plaintiff's statistics or proffer statistics of his own which show that no disparity exists." <u>Rose</u>, 902 F.2d at 1424.  The defendant "may also produce evidence that its disparate employment practices are based on legitimate business reasons, such as job-relatedness or business necessity."  <u>Id.</u>  If the defendant is successful, the plaintiff must show that other selection devices without similarly undesirable effects would serve the employer's legitimate interest.  <u>Id.</u>

Here, Plaintiff does not present any statistical evidence to show that Defendant's minimum qualifications resulted in the exclusion of a particular protected class.  Therefore, the Court concludes that Plaintiff is unlikely to succeed on the merits of a disparate impact claim.

   4.   <u>ADA</u>

Title I of the Americans with Disabilities Act ("ADA") prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

19

Plaintiff's FAC lists the ADA as among the laws that Defendant has violated. (FAC ¶ 2.)[1] It is unclear from the FAC, however, what in particular Plaintiff is alleging.[2] Plaintiff appears to reference some form of disability discrimination by stating, among other things: "given the odds with my disparities under conditions of neurological abnormalities and mere schizophrenic [sic]. Which however, dilated my abilities in exerting to the meticulous unfair typing standard by respondent and its unfair job requirements. That I am however, unable to exert to that of respondent's typing standard." (FAC ¶ 23–24.)

The Court finds that Plaintiff is unlikely to prevail on an ADA claim for several reasons. First, Plaintiff's ADA claim appears to be barred by the Eleventh Amendment to the United States Constitution. Under the Eleventh Amendment, a state is immune from certain actions brought in federal court by a citizen of that state or by citizens of other states. See Papasan v. Allain, 478 U.S.

---

[1] Plaintiff initially cites Title II of the ADA (FAC ¶ 2), which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff later cites statutes comprising Title I of the ADA, which forbids discrimination against disabled individuals in areas including employment. Because the FAC focuses on Plaintiff's employment discrimination allegations, the Court will construe Plaintiff's claim as one under Title I.

[2] Defendant did not brief this matter, as Plaintiff did not include an ADA claim in his original Complaint.

265, 276, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).  The Eleventh Amendment

also bars actions against state agencies or departments unless a state waives

sovereign immunity or Congress exercises its power to override the immunity.

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79

L. Ed. 2d 67 (1984); Bd. of Trs. of the Univ. of Alabama v. Garrett, 531 U.S. 356,

363, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001); Wilbur v. Locke, 423 F.3d 1101,

1111 (9th Cir. 2005).

       The State of Hawaiʻi has not waived its immunity to these types of

claims. See Doe v. State of Haw. Dep't of Educ., 351 F. Supp. 2d 998, 1018 (D.

Haw. 2004) ( "Although the State of Hawaii generally waives . . . sovereign

immunity as to torts of its employees in the Hawaii State Tort Liability Act . . this

waiver only applies to claims brought in state courts and does not constitute a

waiver of the State's Eleventh Amendment immunity.").  Nor has Congress

abrogated Hawaiʻi's Eleventh Amendment immunity with respect to these claims.

In Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 at 374,

the U.S. Supreme Court held that states are immune from suits brought by private

individuals for money damages under Title I of the ADA.

       The Garrett Court noted that two methods of federal recourse under

Title I of the ADA remain after its decision:  the standards of Title I "can be

enforced by the United States in actions for money damages, as well as by private individual in actions for injunctive relief under Ex Parte Young [.]"  See Garrett, 531 U.S. at 374 n. 9; see also Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  However, the Court did not leave open the recourse of injunctive relief against a state itself under Title I.  See Savage v. Glendale Union High School, 343 F.3d 1036, 1040 (9th Cir. 2003) (citing Garrett for the proposition that "Congress may not abrogate the sovereign immunity of the states for suits under Title I of the ADA," and therefore a plaintiff may not sue an arm of the state in federal court for injunctive or monetary relief under Title I).  Here, Plaintiff did not name a state official.  Thus, Plaintiff's ADA Title I claim against the State is barred by the Eleventh Amendment.

Even if the claim was not barred, the likelihood of success on the merits factor still weighs in favor of Defendant.  To maintain a claim of discrimination under Title I, 42 U.S.C. §§ 12111-12117, a plaintiff must show that he is:  (1) disabled under the ADA (2) a "qualified individual with a disability," and (3) discriminated against "because of" the disability.  Nunez v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999); see also 42 U.S.C. § 12112.

22

As discussed <u>supra</u>, Plaintiff has not established that he is qualified for the clerk position.  Therefore, for the above reasons, the Court finds that Plaintiff is unlikely to succeed on the merits of an ADA Title I claim.

5.      <u>Constitutional Claims</u>

Plaintiff's FAC claims violations under the Fourteenth and Fifth[3] Amendments of the United States Constitution and article I sec. 2 and 5 of the Hawaii Constitution.  However, Plaintiff's rambling and confusing allegations do not make clear what specifically gives rise to such causes of action in relation to Defendant.  For example, Plaintiff mentions "the 11 years this state has deprived me with of the 2 DUI cases, which they claimed me of condemned court" and bench warrants that Defendant, "this state and their counterparts . . . often uses for their retaliatory discriminations[.]"   Plaintiff vaguely asserts a deprivation of "my fundamental rights" without adequate explanation as to what those rights are.[4]

_____

[3]  Plaintiff cannot prevail on a Fifth Amendment claim against Defendant as the Fifth Amendment applies "only to actions of the federal government–not to those of state or local governments."  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 687 (9th Cir. 2001) (citing <u>Schweiker v. Wilson</u>, 450 U.S. 221, 227 (1981)).

[4]  To the extent that Plaintiff's claim is related to being denied a job, a right to governmental employment is not a fundamental right protected by substantive due process.  <u>See Mass. Bd. of Retirement v. Murgia</u>, 427 U.S. 307, 313 (1976).

To the extent that Plaintiff appears to argue that "Defendant's unfair job standard requirements and retaliatory discriminations scrutiny" violates the Equal Protection Clause (Inj. Mot. at 20), Plaintiff does not show how he was treated differently than other similarly situated individuals.[5]  Plaintiff also makes passing references to "suspect classifications of alienage" and "alienage classification," but does not describe or show how Defendant's job requirements involve an alienage or other classification.  Thus, the Court finds that it is unlikely that Plaintiff will prevail on the merits of his constitutional claims.

In sum, for the above reasons, Plaintiff has not demonstrated a likelihood of success on the merits.

B.     Irreparable Harm if Relief is Denied

A plaintiff seeking a preliminary injunction must "demonstrate that irreparable injury is <u>likely</u> in the absence of an injunction."  <u>Winter</u>, 129 S. Ct. at 375 (emphasis in original).  Plaintiff claims that "there is abundant evidence" that he will "continue to suffer significant harm from defendant's employment

---

[5] The Equal Protection clause "is essentially a direction that all persons similarly situated should be treated alike."  <u>Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985); <u>Caswell v. Calderon</u>, 363 F.3d 832, 837 (9th Cir. 2004). To maintain an equal protection claim, a plaintiff must show differential treatment from a similarly situated class.  <u>See Washington v. Davis</u>, 426 U.S. 229, 239 (1976).

discrimination and the mere retaliatory discrimination, alienating plaintiff," and that "the threat of harm here is abundant, imposing significant financial burdens and the loss of revenue." (Inj. Mot. at 23.) Plaintiff, however, does not specify how he will be irreparably harmed if the Court does not grant his request for a preliminary injunction.

Plaintiff appears to be seeking an injunction "halting" Defendant's "unconstitutional acts" and expunging Plaintiff's criminal record, which seems to consist of actions that took place more than 14 years ago.[6] Plaintiff asserts that although he has held jobs in the early 1990s, "conspiracies of this state and defendant" has caused him difficulty in securing employment. Although he submits documents listing or describing various job positions as evidence of "rejected job applications," Plaintiff does not provide any evidence that he is unable to secure employment because of his criminal record or Defendant's alleged "unconstitutional acts." It is unclear whether an injunction would prevent the alleged irreparable harm Plaintiff speaks of. Accordingly, the Court concludes that Defendant has failed to show a likelihood of irreparable injury in the absence of an injunction.

---

[6] Plaintiff submits as "exhibited bench warrants" copies of his State Abstract of Traffic Record, which shows offenses in 1996 and 1997. (Doc. # 28-5, 28-6, 28-7.)

C.      Balance of Equities and Public Interest

Because Plaintiff has failed to establish either a likelihood of success on the merits or that he faces a likelihood of irreparable harm, it necessarily follows that the balance of equities does not tip in his favor.

To the extent that Plaintiff may be seeking a modification of Defendant's minimum job requirements, Defendant submits that the position Plaintiff was seeking requires a certain level of expertise and that all applicants are subject to the same requirements.  Forcing Defendant to make changes to its hiring practices, particularly when Defendant has failed to articulate reasons why the practices should be changed, would impose a hardship on Defendant.

Similarly, in light of Plaintiff's low likelihood of prevailing on the merits and failure to show that irreparable harm is likely, Plaintiff cannot demonstrate that an injunction to clear his record or qualify him for the position he sought with Defendant (to the extent that he may seek that relief), would serve a public interest.

In sum, based upon consideration of the Winter factors set forth above, the Court concludes that Plaintiff has not demonstrated that he is entitled to a preliminary injunction.

26

<u>CONCLUSION</u>

For the reasons stated above, the Court (1) **DENIES** Defendant's

Motion to Strike Plaintiff's Complaint for Declaratory and Injunctive Relief (Doc.

# 31) and (2) **DENIES** Plaintiff's Motion for Preliminary Injunctive Relief.  (Doc.

# 28.)


IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 24, 2012.


_____
David Alan Ezra
United States District Judge


<u>Norman Siales v. Hawaii State Judiciary, Department of Human Resources</u>, CV
No. 11-00299 DAE-RLP; ORDER: (1) DENYING DEFENDANT'S MOTION TO
STRIKE PLAINTIFF'S COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND (2) DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION